**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

Roberto Moncada
*Plaintiff-Appellant*,

v.

Antony Blinken

*Defendant-Appellee*

On Appeal from the United States District Court
for the Central District of California,
Los Angeles
No. 2:19-cv-01293-AB-AGR
Hon. Andre Birotte, Junior,
District Judge

**APPELLANT'S OPENING BRIEF**

Sanjay Sobti, Esq.
U.S. LAW CENTER
4230 Green River Road
Corona, CA 92880
951-371-0027

*Attorneys for Appellant*
ROBERTO MONCADA

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES……………………………….…………………..ii

INTRODUCTION………………………………………….……..…………..1

JURISDICTIONAL STATEMENT……………………………..…………3

STATUTORY AND REGULATORY AUTHORITIES………………….………3

ISSUE(S) PRESENTED………………………………………………4

STATEMENT OF THE CASE…………………………………………..5

SUMMARY OF THE ARGUMENT………………………………………9

STANDARD OF REVIEW…………………………..………...……10

ARGUMENT………………………………………..……….12

    I.     Mr. Moncada Should Have Been Granted Declaratory Relief
Finding He is a U.S. citizen…………………………………..12
        A.    Mr. Moncada's Father Did Not Possess Full Diplomatic
Immunity At the Time of Mr. Moncada's Birth……….  12
        B.    Minister Counselor Donovan's Certification is not based on a
reasonable interpretation of the Vienna Convention…....26
    II.    Mr. Moncada's Mother was a Legal Permanent Resident At the
Time of His Birth, and he should therefore be afforded his U.S.
citizenship……………………………………….………….28

CONCLUSION…………………………………..…………….31

STATEMENT OF RELATED CASES…………………...………….32

CERTIFICATE OF COMPLIANCE…………………………………33

CERTIFICATE OF SERVICE ……………………………………34

## Table of Authorities

**Supreme Court Opinions**

*Google L.L.C. v. Oracle Am., Inc.*,
141 S. Ct. 1183 (2021) .......................................................................... 11

*In re Baiz*,
135 U.S. 403 (1890) ...............................................................................25

*INS v. Pangilinan*,
486 U.S. 875 (1988) .............................................................................. 14

*Pullman-Standard, Div. of Pullman v. Swint*,
456 U.S. 273 (1982) .............................................................................. 11

*U.S. Bank N.A. ex rel. CWCapital Asset Mgmt. L.L.C. v. Vill. at Lakeridge, L.L.C.*,
138 S. Ct. 960 (2018) ............................................................................ 11

**U.S. Constitution**

U.S. Const. amend. XIV, § 1 ............................................................. 14, 23

**Federal Court Opinions**

*Aspen Skiing Co. v. Cherrett  (In re Cherrett)*,
873 F.3d 1060 (9th Cir. 2017) ................................................................11

*Bello-Reyes v. Gaynor*,
985 F.3d 696 (9th Cir. 2021) ................................................................ 10

*FTC v. Qualcomm Inc.*,
969 F.3d 974 (9th Cir. 2020) ................................................................ 10

*Hudson v. Pittsburg Unified Sch. Dist.*,
850 F.3d 996 (9th Cir. 2017) ................................................................ 10

*Husain v. Olympic Airways*,
316 F.3d 829 (9th Cir. 2002) ................................................................ 10

*Khan v. Holder*,
584 F.3d 773 (9th Cir. 2009) ................................................................ 11

*Landis v. Wash. State Major League Baseball Stadium Pub. Facilities Dist.*,
11 F.4th 1101 (9th Cir. 2021) ................................................................ 10

*Mondaca-Vega v. Lynch*,
    808 F.3d 413 (9th Cir. 2015) ................................................................ 13, 24

*Mull v. Motion Picture Indus. Health Plan*,
    865 F.3d 1207 (9th Cir. 2017) ................................................................ 10

*Muthana v. Pompeo*,
    985 F.3d 893 (D.C. Dist. Ct. App. Jan. 2021) ....................................14, 23

*Phx. Eng'g & Supply v. Universal Elec. Co.* ,
    104 F.3d 1137 (9th Cir. 1997) ................................................................10

*Richards v. Sec'y of State, Dep't of State,*
    752 F.2d 1413 (9th Cir. 1985) ................................................................ 3

*Smith v. Comm'r*,
    300 F.3d 1023 (9th Cir. 2002) ................................................................ 11

*Stetson v. Grissom,*
    821 F.3d 1157 (9th Cir. 2016) ................................................................ 10

*Suzy's Zoo v. Comm'r*,
    273 F.3d 875 (9th Cir. 2001) ................................................................ 11

*United States v. Melekh*,
    190 F. Supp. 67 (S.D.N.Y. 1960) ................................................................ 26

*Vienna Conv. U.S. v. Al-Hamdi, 356,*
    27 F.3d 564 (4th Cir. 2004) ................................................................26

*Xia v. Tillerson*,
    865 F.3d 643 (D.C. Cir. 2017) ................................................................13

*Yu v. Idaho State Univ.*,
    15 F.4th 1236 (9th Cir. 2021) ................................................................ 10

**United States Code**
5 U.S.C. § 1 ................................................................ 3

5 U.S.C. § 301(a) ................................................................ 6

5 U.S.C. § 701 ................................................................ 4,5

5 U.S.C. § 1503(a) ................................................................ 3, 12

5 U.S.C. § 2201 ............................................................................ 5, 12

8 U.S.C. § 1503 ..........................................................................4, 7, 13

8 U.S.C. § 1503(a) ..................................................................... 4, 7, 13

22 U.S.C. §§ 254a-254e ................................................................... 25

28 U.S.C. § 2201 ............................................................................ 3, 4

**Rules**

Fed. R. App. P. 4(a)(1)(B) ................................................................. 3

Fed. R. App. P. 28-2.6 .................................................................... 29

Fed. R. App. P. 32(a)(5) .................................................................. 30

Fed. R. App. P. 32(f) ...................................................................... 30

**Other**

8. C.F.R. § 101.3 ....................................................................... 23, 24

22 C.F.R. § 51.62(b) ....................................................................6, 22

22 C.F.R. § 51.70 ....................................................................... 7, 23

# INTRODUCTION

Mr. Moncada should have been declared a United States national and the United States Department of State should have issued him a United States passport. On multiple occasions, the government determined that because Dr. Moncada did not have full diplomatic immunity at the time of his son's birth, "Roberto Moncada would therefore have acquired U.S. citizenship at birth." (Excerpts of Record, "ER", 1-ER-6).

However, on July 27, 2018, the United States Department of State revoked Mr. Moncada's passport claiming he was not U.S. national, because at the time of his birth, his father, and as extension Mr. Moncada, was subject to the immunities and privileges of diplomatic immunity. The District Court was "unable to grant the relief Mr. Moncada seeks because it is constrained by the applicable law, as set forth below. The government, though, is not." The Court further found, "[a]t trial, the government categorized its near seventy-year error as 'a very unfortunate and regrettable situation' telling the Court that '[w]e do not hide the fact that this is unfortunate, this is regrettable, but there were mistakes that were made . . . these are unfortunate administrative errors. . .'(Tr. at 176:16-20.) The 'unfortunate and regrettable' defense is not one that the Court has ever known the government to accept from a Defendant. But for Mr. Moncada, apparently, it will have to do." (1-ER-6-7).

As the District Judge noted, "A child was born in America and told by the United States government—his government—that he was an American citizen. And, as the Court began this Order by noting, it told him this again and again and again and again. No surprise then, that he lived his entire life that way. When the government finally realized it had been wrong all along, it told Plaintiff that he was not an American citizen and that this was not his home. So where is his home? Not Nicaragua because he has never lived there and because—as a direct result of the government's errors—he is not (so far as the Court is aware) a citizen. Not America. Anywhere? Can he leave the United States? Could he return? Will he be deported? To where? What is he supposed to do? As he nears seventy the government had made his life a nightmare." (1-ER-36-37). The Court, however, decided in favor the defendant but regrettably so.

Most profoundly, the court stated "[i]t this impossible to conclude that this is justice. Defendant has no legal obligation to make right what is wrong. But *anyone* who causes this gravity of harm possess an urgent moral obligation to remedy what they have done—and in this Court's humble opinion, the United States government has such an obligation." (1-ER 37). The United States government did more than commit a grave moral wrong, the United States government unlawfully revoked citizenship of a man born in the United States.

## JURISDICTIONAL STATEMENT

The basis for jurisdiction for the lower court, was based upon actions arising under the Constitution of the United States 8 U.S.C. § 1503, 28 U.S.C. § 2201 and 5 U.S.C. § 701 *et seq.* The lower court had jurisdiction based on violations of United States constitution violations as a person denied of a right or privilege as a national of the United States.

A lawsuit brought under §1503(a) is "not one for judicial review of the agency's action. Rather, 5 U.S.C. § 1503(a) authorizes a de novo judicial determination of the status of the plaintiff as a United States national." Richards v. Sec'y of State, Dep't of State, 752 F.2d 1413, 1417 (9th Cir. 1985).

The District Court issued findings of fact and conclusions of law on July 6, 2023 and entered the final judgment on July 25, 2023. The Notice to Appeal in this matter was filed on September 22, 2023, which was filed within sixty days of the final judgment and timely pursuant to Fed. R. App. P. 4(a)(1)(B). This appeal is from a final order or judgment that disposes of all parties' claims. (1-ER-2-3).

## STATUTORY AND REGULATORY AUTHORITIES

Mr. Moncada brough forth his suit pursuant to Fourteenth Amendment, in that he was born subject to the jurisdiction of the United States and therefore the denial of his passport application violated his constitutional rights under the

Fourteenth Amendment, which provides that "all persons born… in the United States, and subject to the jurisdiction thereof, are citizens of the United States …." Therefore under 8 U.S.C. § 1503, as he should be declared a United States national and under 28 U.S.C. § 2201 as he should be declared as having been born subject to the jurisdiction of the United States and under Administrative Procedure Act "APA," 5 U.S.C. § 701 *et seq.* as the denial of his application for a passport was "arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with the law."

## ISSUES PRESENTED

1. Whether the district court erred in holding Plaintiff did not warrant declaratory relief finding that he is U.S. citizen, and he was unlawfully denied a hearing by the U.S. Department of State thereby violating his due process?

2. Whether the State Department's "certification" accurately represents a reasonable interpretation of the Vienna Convention?

3. Whether Plaintiff's mother immigration status at the time of his birth as a Legal Permanent Resident, would thereby establish Plaintiff was born under the jurisdiction of the Untied States, and is in fact a U.S. citizen?

## STATEMENT OF THE CASE

Petitioner, Mr. Moncada, filed suit in Central District Court of California, Los Angeles for declaratory relief pursuant to 8 U.S.C §1503(a), 28 U.S.C. 5 U.S.C. § 2201, and 5 U.S.C. § 701 *et seq.* on or about February 21, 2019. (1-ER-1, 4-ER-269). Mr. Moncada had his United States passport revoked, by United States Department of State, which he held since 1955. Mr. Moncada, was born in New York City on July 6, 1950, and is 73 years old. (3-ER-136, 160-161). He has been living in California since 2001. At the time of his birth, and before her marriage to his father, his mother was a Legal Permanent Resident of the Untied States, and his father, Dr. Jose Maria Moncada, was listed in the Blue List as a "Consul Attache." Attaché comes from the French attacher, which literally means **"attached,"** and it was first applied to someone working for a diplomat, such as a junior officer.

Mr. Moncada, was a issued a valid birth certificate by the State of New York, and issued passport on or around 1955, 1973, 1978, 1988 and 1999, and a passport card around May of 2019. His birth certificate was issued from the New York Department of Health, Bureau of Records and Statistics, Certificate No. 156-50-126041. The birth certificate is signed by New York City, Mayor William O'Dwyer. (2-ER-94, 3-ER-136, 160-161).

Mr. Moncada, filed an Immigrant Visa Petition for his father Dr. Jose Maria Moncada on November 20, 1978, and Dr. Moncada was admitted to the U.S. as a

permanent resident on October 25, 1979. Further Mr. Moncada filed a I 130 petition for alien relative for his now ex-wife in of June 3, 1997 which was adjudicated and granted on May 2, 2001 after the Department of State confirmed on April 26, 2001 that Dr. Moncada's father did not appear on the Blue List. The State Department Branch of Chief Information Services, Hugh Howard sent a letter to Immigration and Naturalization Services (INS) the legacy agency to the current United States Citizenship and Immigration Services (USCIS), that Mr. Moncada's father did not appear on "Department of State Diplomatic Lists" (2-ER-95-96). Dr. Moncada was not diplomat part of any permanent missions, he was always part of delegation.

In a letter dated, July 27, 2018, Appellee, Defendant in this matter, United States Department of State, informed Mr. Moncada that his United Staes passport had been revoked pursuant to 22 C.F.R. § 51.62(b), claiming Mr. Moncada was not a U.S. national. The basis of this revocation was based upon a claim by Department of State that Dr. Moncada, Mr. Moncada's father was serving as "Attache to the Permanent Mission of Nicaragua to the United Nations," at the time of his birth in New York. As such the Department concluded that Mr. Moncada was "accorded diplomatic agent level immunity pursuant to United States with diplomatic agent level immunity is born not subject to the jurisdiction of the United States and does not acquire U.S. citizenship at birth under the Fourteenth Amendment and INA 5 U.S.C. § 301(a)." The Letter concluded Mr. Moncada was not born subject to the

jurisdiction of the United States and did not acquire U.S. citizenship by virtue of his birth here, and therefore his passport was revoked. He was also afforded no hearing under 22 C.F.R §§ 51.70 through 51.74 because he was classified a non-national. (3-ER-157-158).

Mr. Moncada sent a reply to the U.S. Department of State on October 25, 2018 requesting reconsideration of the revocation, submitting evidence that his citizenship had been considered and adjudicated many times over seventy years by the U.S. Department of State and United States Citizenship and Immigration Services. Mr. Moncada also underscored the lack of reliable evidence establishing that his father Dr. Moncada enjoyed full diplomatic privileges and immunities because the government documents referenced his father's function as a consular officer rather than a diplomatic agent or head of permanent member of a diplomatic mission. The "Blue List" maintained by the Department of State Dr. Moncada is identified as "Consul Attache," Deputy Consul," and "Consul" not "Diplomat." (3-ER-148-151).

The United States Department of State responded to Mr. Moncada's reconsideration letter on November 29, 2018, and simply found Mr. Moncada was not entitled to an administrative hearing or any further review, and informed Mr. Moncada he may seek an action in U.S. District Court pursuant to 8 U.S.C. § 1503. (3-ER-139).

Mr. Moncada's State Department Passport file contained multiple documents from the State Department attesting that Dr. Moncada's father's name did not appear on the Blue List as a person possessing diplomatic immunity status at the time of Mr. Moncada's birth. (2-ER-94-95). The USUN Blue List contains members of delegations to the United Nations entitled to diplomatic privileges and immunities. (1-ER-10). If questions arise regarding an individual's diplomatic privileges and immunities, such questions are referred to Minister Counselor Donovan because it is his responsibility "to review and analyze these cases." (1-ER-8).

On May 26, 1949 President Truman issued an exequatur to Dr. Moncada's father in recognition of his appointment as "Counsel of Nicaragua at New York, New York." A United Nations document entitled "Permanent Missions and Delegations to the United Nations No. 20 (July to Aug. 1950), the U.N. Blue List, list Dr. Moncada as both "Consul, New York" and "Attache." (2-ER-93). The address of the Nicaraguan delegation is listed in the United Nations document as "Permanent Delegation of Nicaragua to the United Nations, 1627 New Hampshire Avenue, Washington 9, DC." The document features the names of the wives of the Ambassadors, Secretaries and Counselors who appear there, but Dr. Moncada's wife, Mr. Moncada's mother, was not listed on that document. (2-ER-94). Dr. Moncada was part of a delegation not a mission.

Despite insurmountable evidence in favor of Mr. Moncada the District court Judge concluded on July 6, 2023 that (1) at no point prior to 2018 did an individual charged with determining Dr. Moncada's diplomatic status consult the USUN Blue List; and (2) at no point in time did the USUN erroneously determine that Dr. Moncada did not possess full diplomatic privileges and immunities, and as such the court could not make a finding that Mr. Moncada warranted declaratory relief finding him to be U.S. citizen. (1-ER-22-23).

## SUMMARY OF THE ARGUMENT

Mr. Moncada's father did not enjoy full diplomatic level of immunity at the time of Mr. Moncada's birth and therefore Mr. Moncada was born to "subject to the jurisdiction of" the United States and is a U.S. citizen based on a fact-based inquiry based on a reasonable interpretation of the Vienna Convention. In the alternative, Mr. Moncada's mother was a Legal Permanent Resident at the time of his birth, and therefore because he was born to one parent who was not subject to diplomatic immunities, he would still be subject to the jurisdiction of the United States and as such a United States citizen. USUN was not able to locate in its records the request for privileges and immunities that, as matter of practice, would have come after the request for registration. (1-ER 18).

## STANDARD OF REVIEW

Findings of fact are reviewed for clear error. See Yu v. Idaho State Univ., 15 F.4th 1236, 1241 (9th Cir. 2021); Landis v. Wash. State Major League Baseball Stadium Pub. Facilities Dist., 11 F.4th 1101, 1105 (9th Cir. 2021); Bello-Reyes v. Gaynor, 985 F.3d 696, 699 (9th Cir. 2021); FTC v. Qualcomm Inc., 969 F.3d 974, 993 (9th Cir. 2020); Mull v. Motion Picture Indus. Health Plan, 865 F.3d 1207, 1209 (9th Cir. 2017); *L.J. by & through* Hudson v. Pittsburg Unified Sch. Dist., 850 F.3d 996, 1002 (9th Cir. 2017) (noting standard applies even when findings are based on the administrative record); Stetson v. Grissom, 821 F.3d 1157, 1163 (9th Cir. 2016); Husain v. Olympic Airways, 316 F.3d 829, 835 (9th Cir. 2002).

This standard also applies to the district court's application of law to facts where it requires an "essentially factual" review. See id.. The court reviews adopted findings with close scrutiny, even though review remains to be for clear error. See Phx. Eng'g & Supply v. Universal Elec. Co., 104 F.3d 1137, 1140 (9th Cir. 1997).

Conclusions of law are reviewed de novo. See Qualcomm Inc., 969 F.3d at 993; Landis, 11 F.4th at 1105; Mull, 865 F.3d at 1209; Stetson, 821 F.3d at 1163; Husain, 316 F.3d at 835.

A mixed question of law and fact arises when the historical facts are

established, the rule of law is undisputed, and the issue is whether the facts satisfy the legal rule. See Pullman-Standard, Div. of Pullman v. Swint, 456 U.S. 273, 289 n.19 (1982); see also U.S. Bank N.A. ex rel. CWCapital Asset Mgmt. L.L.C. v. Vill. at Lakeridge, L.L.C., 138 S. Ct. 960, 967 (2018); Aspen Skiing Co. v. Cherrett (In re Cherrett), 873 F.3d 1060, 1066 (9th Cir. 2017); Khan v. Holder, 584 F.3d 773, 780 (9th Cir. 2009); Suzy's Zoo v. Comm'r, 273 F.3d 875, 878 (9th Cir. 2001) (stating that a mixed question "exists when primary facts are undisputed and ultimate inferences and legal consequences are in dispute"). Mixed questions of law and fact generally require the consideration of legal concepts and the exercise of judgment about the values that animate legal principles. See Smith v. Comm'r, 300 F.3d 1023, 1028 (9th Cir. 2002).

The Supreme Court has explained that a reviewing court should try to break [a mixed question of law and fact] into its separate factual and legal parts, reviewing each according to the appropriate legal standard. But when a question can be reduced no further, … "the standard of review for a mixed question all depends—on whether answering it entails primarily legal or factual work." Google L.L.C. v. Oracle Am., Inc., 141 S. Ct. 1183, 1199 (2021).

# ARGUMENT

## I.   MR. MONCADA SHOULD HAVE BEEN GRANTED DECLARATORY RELIEF FINDING HE IS A U.S. CITIZEN.

### A.   Mr. Moncada's Father Did Not Possess Full Diplomatic Immunity At the Time of Mr. Moncada's Birth

It is a minority of diplomats who have full diplomatic immunity in the U.S. – and whose children, therefore, are not born as U.S. citizens. There are 'two sources of citizenship, and two only: birth and naturalization.'" *Miller v. Albright*, 523 U.S. 420, 423 (1998) (quoting *United States v. Wong Kim Ark*, 169 U.S. 649, 702 (1898). "Within the former category, the Fourteenth Amendment of the Constitution guarantees that every person 'born in the United States, and subject to the jurisdiction thereof, becomes at once a citizen of the United States, and needs no naturalization.'" Id. at 423-24 (quoting *Wong Kim Ark*, 169 U.S. at 702). **Mr. Moncada contends he was born in the United States; while his father was not granted full diplomatic immunity and therefore, he is a birth right U.S. citizen.**

Title 8, United States Code, 5 U.S.C. § 1503(a) states that "[i]f any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action under the provisions of 5 U.S.C. § 2201 of title 28

against the head of such department or independent agency for a judgment declaring him to be a national of the United States . . ." 8 U.S.C. § 1503(a).

Mr. Moncada sought a Declaratory Judgment from the District Court that he is a U.S. Citizen by birth and an order compelling the Department of State to reopen and approve his application for a U.S. passport pursuant to id. The key piece of evidence the government relied on for its defense is the Letter from Minister Counselor Donovan indicating that Dr. Moncada and other members of his family began to enjoy diplomatic agent level privileges and immunities on April 27, 1950.

In an alienage determination under 8 U.S.C. § 1503(a), the Plaintiff bears the initial burden of producing "substantial credible evidence" of his citizenship claim. Mondaca-Vega v. Lynch, 808 F.3d 413, 419 (9th Cir. 2015). This threshold showing is minimal. In Xia v. Tillerson, 865 F.3d 643, 656 (D.C. Cir. 2017), the United States Court of Appeals for the District of Columbia Circuit held that "[p]resenting proof of a naturalization certificate or passport—even if already administratively cancelled—would seem to satisfy that prima facie requirement."

In *Mondaca-Vega*, the Ninth Circuit held that because the petitioner "possessed a valid U.S. passport and successfully petitioned for the adjustment of status of his wife and children based on his purported status as a U.S. citizen[]" he had put forth "substantial credible evidence of U.S. citizenship." Mondaca-Vega,

808 F.3d at 419 (cleaned up). If the plaintiff satisfies his burden to rebut a presumption of alienage, the "burden shifts back to the government to prove . . . [that the plaintiff is not a citizen by] clear and convincing evidence." Id. (cleaned up). "[T]he power to make someone a citizen of the United States has not been conferred upon the federal courts, like mandamus or injunction, as one of their generally applicable equitable powers." INS v. Pangilinan, 486 U.S. 875, 883-84 (1988) (citing 28 U.S.C. §§ 1361, 1651).

An alleged deprivation of American citizenship without due process of law is a judicially cognizable injury in fact. U.S. Const. amend. XIV, § 1. Citizenship is expressly guaranteed by the Fourteenth Amendment to the Constitution, which speaks in the most positive terms. *Muthana v. Pompeo, 985 F.3d 893, 898 (D.C. Dist. Ct. App. Jan. 2021)*. Diplomatic immunity is governed by the Vienna Convention on Diplomatic Relations. Vienna Convention on Diplomatic Relations, Apr. 18, 1961, 23 U.S.T. 3227. 500 U.N.T.S. 95. When interpreting treaties, courts are guided by principles similar to those governing statutory interpretation. *Id.*

The U.S. Mission to the United States "USUN" represents the United States at the United Nations. (2-ER-97). The USUN is "its own entity under the Department of State." (1-ER-7) A permanent mission to the United Nations is a diplomatic mission in New York that houses the diplomatic delegation of a member

state to the United Nations. (1-ER-7) The only office at the U.S. Mission that affords privileges and immunities. Employees at the USUN are Department of State employees and report "to the ambassadors who are representing and serving at the [USUN]. (1-ER-8). to U.N. diplomats is the office of Host Country Affairs.

There are two levels of diplomatic immunity that are granted by the USUN: (1) Full Diplomatic Privileges and Immunities; and (2) Official Acts Immunities. An individual who serves his or her mission in an administrative capacity—including, for instance, as a chauffeur or a chef—is entitled to "official acts immunities." Such an individual would possess immunity only for actions that flow from their employment responsibilities and would not be entitled to full diplomatic privileges and immunities. Conversely, an individual who serves his or her mission in a diplomatic capacity would be entitled to full diplomatic privileges and immunities and thus would not be subject to the jurisdiction of the United States. (1-ER-8-9).

### Dr. Moncada was part of a delegation and not a mission to New York

On May 26, 1949 President Truman issued an exequatur to Dr. Moncada's father in recognition of his appointment as "Counsel of Nicaragua at New York, New York." (2-ER-93). A United Nations document entitled "Permanent Missions and Delegations to the United Nations No. 20 (July to Aug. 1950), the U.N. Blue List, list Dr. Moncada as both "Consul, New York" and "Attache." (2-ER-93). The address of the Nicaraguan delegation is listed in the United Nations document as

**"Permanent Delegation of Nicaragua to the United Nations, 1627 New Hampshire Avenue, Washington 9, DC."** The document features the names of the wives of the Ambassadors, Secretaries and Counselors who appear there, but Dr. Moncada's wife, Mr. Moncada's mother, was not listed on that document. (2-ER-94). Dr. Moncada was part of a delegation not a mission. There was no permanent mission in New York for Nicaragua. [bold emphasis added]

When Mr. Moncada was born his father Dr. Moncada was part of a delegation not a mission. The delegation was in Washington D.C. and not where the UN is located in New York.

A delegation usually refers to the group of representatives sent by a member state to participate in the UN's activities. This could include attending sessions of the UN General Assembly, UN conferences, or other UN-related meetings. Each member state of the UN sends a delegation to represent its government and to participate in UN proceedings. This delegation is typically headed by an Ambassador or a Permanent Representative who is the main point of contact between the member state and the UN. On the other hand, a mission, particularly a diplomatic mission, often refers to a group of people from one state or international organization (like the UN) that is stationed in another state to conduct diplomatic activities. For instance, a member state may have a diplomatic mission to the United States, which is essentially its embassy or consulate in the U.S. This mission is

responsible for maintaining diplomatic relations, representing the interests of the sending state, providing consular services, and more. In the context of the UN, a mission can also refer to a country's permanent mission to the UN, which is different from its delegation to the UN. The permanent mission is more like a permanent diplomatic office that represents a country at the UN headquarters in New York City. But in case of Nicaragua the delegation and mission was in Washington D.C. from 1945 to 1954. It manages ongoing diplomatic work and maintains relations with the UN throughout the year, not just during specific meetings or conferences.

In summary, a delegation is more about the group of representatives participating in specific events or conferences (like those of the UN), while a mission implies a more permanent or long-term diplomatic presence, such as an embassy or a permanent mission to an international organization like the UN. As part of the delegation he is not subject to the full diplomatic immunities and therefore Mr. Moncada would have been born to the jurisdiction of the United States.

**Dr. Moncada was not affirmed or recognized a full diplomat.**

The Host Country Affairs Section has a process for recognizing diplomats with full diplomatic privileges and immunities and creating internal records documenting such privileges and immunities. Information that was once contained

in a paper file called a "KARDEX" is now retained in a computerized database called "TOMIS. (1-ER-9). Before a diplomatic family arrives in the United States, their respective mission typically would "communicate via diplomatic note to the Office of UN Protocol the name of the diplomat, the diplomatic title, the work that [the diplomat is] going to be doing at the mission, as well as any family members . . . [and this information] would all be sent by diplomatic note to the UN Office of Protocol, which would then . . . verify [the information.]" (1-ER-9).

The U.N. reviews this information and "has to check a few boxes" to determine whether a given individual is entitled to full diplomatic privileges and immunities. Namely, the UN determines whether the individual has a diplomatic title and whether the individual will, in fact, be doing diplomatic work. (1-ER-9). After this verification takes place, the U.N. Office of Protocol sends the relevant information to the USUN with two requests: (1) A request to register the individual; and (2) a request for recognition with privileges and immunities, if there is a determination that "it's a diplomatic person." Before the implementation of the TOMIS system, this registration was memorialized in a physical paper index card called a KARDEX. KARDEX cards included the following information: "[T]he name of the diplomat, their rank, their diplomatic title . . . the country [the diplomat was] serving from, and then any family members who were notified to [the USUN]." (1-ER-10).

KARDEX cards were created for each diplomat and filed in alphabetical order in a card catalog file that still exists at the USUN Office, with records dating back to 1947. Typically, because all members of a diplomatic household are recognized with full privileges and immunities, the USUN "would want the entire family to be listed" on the KARDEX. (Id. at 35:1-4) (Donovan). Often times, however, KARDEX cards were not updated to reflect the birth of a child into a diplomatic household because, inter alia, the respective mission did not report the birth to the USUN. (1-ER-10).

Dr. Moncada's absence from the UN Yearbook and the government's inability to locate the request for privileges and immunities is highly probative and in favor Mr. Moncada's position. Specifically, here, the only trace of Dr. Moncada at the United Nations is contained in two documents 1) the minutes of the Fifth Administrative and Budgetary Committee, held on October 4, 1950 at 10:45 a.m., and the minutes of the Fifth Administrative and Budgetary Committee regarding Budget estimates for the financial year 1951. (2-ER-102).

**Dr. Moncada was affirmed on numerous occasions that he was not subject to full diplomatic immunities**

The Court speculated, that "[t]hough the Court cannot, with certainty, make findings of fact regarding what occurred in 1978 and 2001, the Court concludes that it is exceedingly likely that individuals tasked with determining Dr. Moncada's diplomatic status referenced the State Department Blue List instead of the USUN Blue List." (1-ER-23). From 1978 to 2001 numerous individuals had certified an opposite conclusion from that of Minister Counselor Donovan in 2018. (1-ER-23-24).

On April 26, 2001, Department of State Branch Chief of Information Services Hugh Howard sent a letter to the INS to confirm that Plaintiff's father's name did not appear in the "Department of State Diplomatic Lists On May 2, 2021, INS approved the Form I-130 he filed on behalf of his wife. Plaintiff's State Department Passport File demonstrates that on multiple occasions, individuals at the State Department inquired into Plaintiff's citizenship. status. On each occasion, it was determined that Plaintiff was a United States citizen. For instance, in 1978, the State Department endeavored to answer the very question animating this litigation: Did Dr. Moncada possess full diplomatic privileges and immunities at the time of Plaintiff's birth? It determined that he did not and thus that Plaintiff was a United

States citizen. The same conclusion is implicit in the issuance of five passport books and passport cards to Plaintiff over a 55-year period. (1-ER-21).

A telegram was sent in November of 1978 from "AMEBASSY MANAGUA" to "SECSCTATE WASHDC 9171." The Subject Line is "Verification of Citizenship." The telegram reads as follows: "Roberto Moncada. DPOB, July 6, 1950, New York, New Yrok [sic], has filed resident Visa Petitions for several family members based on his having been born a U.S. Citizen. He was issued a U.S. Passport in the U.S. We notice, however, that on his birth certificate his father is listed as a Deputy Consul [w]ho worked in the Nicaraguan Consulate. Was Passport Office aware of this? Is it possible that father was working in consulate and was not on Blue List/before we proceed further with the case, we would like to be sure that Moncada was not registered as U.S. citizen by mistake." A Department of State "Memorandum of Conversation" that was drafted on December 7, 1978 reads as follows: Subject: Roberto Moncado [sic] Participants: Mr. and Ms. Protocol 20291 "Informed by Ms. that name of subject's father does not repeat not appear on blue list as person possessing Diplomatic status at time of subject's bieth [sic] at New York, New York on Jult [sic] 6, 1950. (Ex. 29 at Def-00000019). (1-ER-211).

On December 8, 1978, a telegram with the subject line "U.S. Citizenship" was sent. The telegram reads as follows: "Protocol Office reports that name of

Moncada's father does not repeat not appear on blue list as person possessing full diplomatic immunity status at time of birth of Roberto Moncada at New York, New York on July 6, 1950. Roberto Moncada would therefore have acquired U.S. Citizenship at birth. YY." (Ex. 29 at Def-00000017-18.) On April 26, 2001, a letter was sent from Hugh Howard, the "Branch Chief, [of] Information Services" at the Ralph J. Bunche Library housed within the Department of State to "Mr. Shimizu" an employee at Immigration and Naturalization Services (the "Shimizu Letter"). (1-ER-22).

The Shimizu Letter states as follows: "As we discussed on the telephone on April 25, 2001, I have searched the Department of State Diplomatic List for 1949 and 1950 and have been unable to find any entries for Jose Maria Moncada or Jose Maria Moncada Lezama of the Embassy of Nicaragua. I have photocopied several entries and have included these in my fax, but you will see that the Nicaraguan mission remained fairly stable over that period." (Dkt. No. 147-1 at 1,DEF 00000058.) The Shimizu Letter attached several entries from the Department of State Diplomatic List ("State Department Blue List") between 1949 and 1950. Dr. Moncada's name is not included. (Id. at DEF 00000059-62.) Past inquiries into Dr. Moncada's diplomatic status led to repeated determinations that Dr. Moncada did not possess full diplomatic privileges and immunities at the time of Plaintiff's birth (or at any other time.) Considered against the backdrop of Minister Counselor's

Certification to the contrary and, more importantly, the evidence bolstering that certification, this reveals a staggering breakdown in (and failure of) governmental procedures. (1-ER-22).

On numerous occasions these individuals were looking at the correct list for the embassy in Washington D.C. They were looking at the correct location at where Dr. Moncada was originally listed as he did not work in New York, because Nicaragua had no mission or delegation in New York. Dr. Moncada was found on the "Foreign Consular Office in the United States" list for the year Mr. Moncada was born, in 1950. Pursuant to 8 C.F.R. §101.3 (b)(2) specifically:

**§ 101.3 Creation of record of lawful permanent resident status for person born under diplomatic status in the United States.**

(a) Person born to foreign diplomat.
(1) Status of person. A person born in the United States to a foreign diplomatic officer accredited to the United States, as a matter of international law, is not subject to the jurisdiction of the United States. That person is not a United States citizen under the Fourteenth Amendment to the Constitution. Such a person may be considered a lawful permanent resident at birth.

(b) Child born subject to the jurisdiction of the United States. A child born in the United States is born subject to the jurisdiction of the United States and is a United States citizen if the parent is not a "foreign diplomatic officer" as defined in paragraph (a)(2) of this section. This includes, for example, a child born in the United States to one of the following foreign government officials or employees:

(1) Employees of foreign diplomatic missions whose names appear in the State Department list entitled "Employees of Diplomatic Missions Not Printed in the Diplomatic List," also

known as the White List; employees of foreign diplomatic missions accredited to the United Nations or the Organization of American States; or foreign diplomats accredited to other foreign states. The majority of these individuals enjoy certain diplomatic immunities, but they are not "foreign diplomatic officers" as defined in paragraph (a)(2) of this section. The immunities, if any, of their family members are derived from the status of the employees or diplomats.

**(2) Foreign government employees with limited or no diplomatic immunity such as consular officials named on the State Department list entitled "Foreign Consular Officers in the United States" and their staffs.** [bold emphasis added]

8 C.F.R. §101.3 (b)(2).

Dr. Moncada's name appears in the Foreign Consular Office in the United States" list and as specified in the regulations Mr. Moncada is born to the subject matter jurisdiction of the United States and the parent is not a "foreign diplomatic officer" if his father is a consular official names in the **State Department list entitled "Foreign Consular Officers in the United States, which his father is.**

### Mr. Moncada's Due process rights violated when he was not afforded a hearing.

In a letter dated, July 27, 2018, the United States Department of State, informed Mr. Moncada that his United Staes passport had been revoked pursuant to 22 C.F.R. § 51.62(b), claiming Mr. Moncada was not a U.S. national. The Letter concluded Mr. Moncada was not born subject to the jurisdiction of the United States and did not acquire U.S. citizenship by virtue of his birth here, and

therefore his passport was revoked. He was also afforded no hearing under 22 C.F.R §§ 51.70 through 51.74 because he was classified a non-national. (3-ER-146-147). By being denied a hearing his due process right to determine his nationality was denied. An alleged deprivation of American citizenship without due process of law is a judicially cognizable injury in fact. U.S. Const. amend. XIV, § 1. Citizenship is expressly guaranteed by the Fourteenth Amendment to the Constitution, which speaks in the most positive terms. *Muthana v. Pompeo*, 985 F.3d 893, 898.

The denial of a hearing in this case has significant legal implications, particularly concerning the individual's due process rights in establishing their nationality. This situation represents a critical legal issue where the alleged deprivation of American citizenship occurs without the due process of law, constituting a judicially recognizable injury in fact. This concept is firmly rooted in the U.S. Constitution, specifically under the Fourteenth Amendment, Section 1, which unequivocally guarantees citizenship rights.

Mr. Moncada was significantly prejudiced due to the lack of administrative hearing. He has had to spend insurmountable amount of time and financial resources on litigation the matter. He has had to deplete any financial resources he had in attorney and court fees litigating his nationality and should have been afforded an administrative hearing to address the issue initially.

**B.  Minister Counselor Donovan's Certification is not based on a reasonable interpretation of the Vienna Convention**

The Court did find that "Plaintiff has satisfied his initial burden of producing 'substantial credible evidence' of his citizenship claim. Mondaca-Vega, 808 F.3d at 419. Specifically, Plaintiff has satisfied his burden through the following evidence: (1) the December 1978 Telegram, see Ex. 29 at DEF 00000017-19; (2) the Shimizu Letter, see Dkt. No. 147 at DEF 00000058; and (3) the U.S. passport books and passport card issued to Plaintiff on five occasions. see SF 7; Ex. 29." (1-ER-29). But the court also found "Defendant, though, has satisfied its corresponding burden to demonstrate by clear and convincing evidence that Plaintiff is not a U.S. citizen. In reaching this decision, the Court relies on the following evidence that Dr. Moncada enjoyed full diplomatic privileges and immunities at the time of Plaintiff's birth." (1-ER-29).

The Court found that Minister Counselor Donovan's Certification is based on a reasonable interpretation of the Vienna Convention and given his expertise and credibility at trial, and Court afforded the Certification considerable weight. (1-ER-29). However, the evidence here strongly suggests that Dr. Moncada's function was performing administrative functions and duties as a consular employee in connection with his government's representation to the U.N. Nicaragua's request for privileges and immunities is absent, there is "no evidence

indicating that Dr. Moncada's duties were that of a 'diplomatic agent'" consistent with Article 29 of the Vienna Convention. "[u]nder Article 37 of the VCDR, 'Members of the administrative and technical staff of a diplomatic mission [enjoy] less extensive immunity than that of diplomatic agents." Minister Counselor Donovan expressed he was so confident in the registration process he oversees that if faced with what may be disparate information regarding the diplomatic status of  foreign government he would not double check, because once his office has made the determination it is inviolable.  (2-ER-105)

The Diplomatic Relations Act of 1978, 22 U.S.C. §§ 254a-254e. replaced the 1790 Statute and applies to foreign diplomats serving in the United States since then. The 1978 statute incorporated into United States law the 1961 Vienna Convention on Diplomatic Relations, 23 U.S.T 3227; T.I.A.S No. 7502 (April 18, 1961entered into forced in the U.S. on December 13, 1972).

Further, Minister Counselor Donovan, did not know in 1950 the process of how diplomatic agent levels privileges and immunities were established. He did not know what Dr. Moncada's specific duties and functions were in 1950, he only knows that the State Department document had the title of "attaché." (2-ER-105).

An "alleged want of jurisdiction depends upon questions of fact." In re Baiz, 135 U.S. 403, 431 (1890).  The State Department's certification that a

plaintiff lacks immunity may only be conclusive when based on a "reasonable interpretation of the Vienna Conv. U.S. v. Al-Hamdi, 356, 27 F.3d 564, 571-73 (4th Cir. 2004). An accredited individual's title is of no legal significance; job responsibilities are the best indication of whether the highest degree of immunity was conferred. See, e.g., United States v. Melekh, 190 F. Supp. 67, 88 (S.D.N.Y. 1960).  Here, it is clear through the evidence provided that did not exist.

**II.     Mr. Moncada's Mother was a Legal Permanent Resident At the Time of His Birth, and he should therefore be afforded his U.S. citizenship**

Mr. Moncada's mother was a Legal Permanent Resident at the time of his birth and before she married Dr. Moncada. Article 37 of the VCDR sets forth three levels of privileges and immunities for members and staff of the mission:

1.  The members of the family of a diplomatic agent forming part of his household shall, **<u>if they are not nationals of the receiving States,</u>** enjoy the privileges and immunities specified in articles of 29 to 36. [bold emphasis added]

2.  Members of the administrative and technical staff of the mission, together with members of their families forming part of their respective households, shall if they are not nationals of or permanently resident in the receiving State, enjoy the privileges and immunities specified in articles 29 to 35, except that the

immunity from civil and administrative jurisdiction of the receiving States specified in paragraph 1 of article 31 shall not extend to acts performed outside the course of their duties. They shall also enjoy privileges specified in article 36, paragraph 1, in respect of articles imported at the time of the first installation.

3. Members of the service staff of the mission who are nationals or permanently resident in the receiving State shall enjoy immunity in respect of acts performed in the course of their duties, exemption from dues and taxes on the emoluments they receive by reason of their employment and the exemption continued in article 33.

The Vienna convention Articles 37 and 38 of the VCDR and Article 71 of the VCCR provides that mission members and their families enjoy limited or no privileges and immunities if they are nationals of or permanently resident in the receiving state. A child born in the U.S. to a parent who is a foreign diplomatic officer listed on the Blue List does not receive U.S. citizenship unless the other parent is a U.S. citizen or U.S. national. This is the case even if the other parent is in the U.S. on a non-diplomatic visa.

Article 37 subsection 1, states the members of the family of a diplomatic agent forming part of his household shall, **if they are not nationals of the**

**receiving States,** enjoy the privileges and immunities specified in articles of 29 to 36. Here Mr. Moncada's mother was a national of the receiving states and therefore did not enjoy the privileges and immunities afforded to full diplomats.

His mother worked and paid taxes from 1947 until 1954 and she retired in 1999, and she received retirement through Social Security. If she was granted privileges and immunities she would not have been granted her benefits from the Untied States. Mr. Moncada's mother, being a permanent resident of the United States, enjoyed limited to no privileges and immunities. If a person receives

Her name did not appear on the Blue List. If one of a child's parents is a U.S. citizen or U.S. national at the time of the child's birth, this parent falls under the jurisdiction of the United States. As a result, the child would also be subject to U.S. jurisdiction. Therefore, a child born in the U.S. to a U.S. citizen or national is granted U.S. citizenship at birth, regardless of whether the other parent is a foreign diplomatic officer. This implies that Mr. Moncada would be a U.S. citizen from birth under the jurisdiction of the United States, under these circumstances.

**CONCLUSION**

Based upon the foregoing, Petitioner respectfully requests that this Court reverse the decision of the District Court and remand the matter to the lower court and/or any other relief the court deems just and proper.

Date: January 31, 2024

/s/Sanjay Sobti, Esq.
U.S. LAW CENTER
4230 Green River Road
Corona, CA 92880
951-371-0027

*Attorneys for Appellant*
ROBERTO MONCADA

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

**Form 17. Statement of Related Cases Pursuant to Circuit** Fed. R. App. P. 28-2.6

The undersigned attorney or self-represented party states the following:

I am unaware of any related cases currently pending in this court.

Date: January 31, 2024

/s/Sanjay Sobti, Esq.
U.S. LAW CENTER
4230 Green River Road
Corona, CA 92880
951-371-0027

*Attorneys for Appellant*
ROBERTO MONCADA

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

I am the attorney for this above referenced matter.

**This brief contains 7871 words,** excluding the items exempted by id. R. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

Date: January 31, 2024

/s/Sanjay Sobti, Esq.
U.S. LAW CENTER
4230 Green River Road
Corona, CA 92880
951-371-0027

*Attorneys for Appellant*
ROBERTO MONCADA

# CERTIFICATE OF SERVICE

I certify that on the date listed below, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system.

I further certify that participants in the case are registered CM/ECF users and will be served by the CM/ECF system.

Date: January 31, 2024

/s/Sanjay Sobti, Esq.
U.S. LAW CENTER
4230 Green River Road
Corona, CA 92880
951-371-0027

*Attorneys for Appellant*
ROBERTO MONCADA